

2004 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

7-29-2004

# Clemmons v. Wolfe

Precedential or Non-Precedential: Precedential

Docket No. 02-4457

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2004

Recommended Citation

"Clemmons v. Wolfe" (2004). *2004 Decisions*. Paper 428.
http://digitalcommons.law.villanova.edu/thirdcircuit_2004/428

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2004 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

UNITED STATES COURT OF
APPEALS FOR THE THIRD CIRCUIT

———

No. 02-4457

———

CHARLIE CLEMMONS,

Appellant

v.

WILLIAM J. WOLFE, Supt.;
DISTRICT ATTORNEY OF THE
COUNTY OF DAUPHIN; ATTORNEY
GENERAL OF THE STATE OF
PENNSYLVANIA, *GERALD J.
PAPPERT

*(Amended - See Clerk's Order dated
3/10/04)

———

On Appeal from the United States
District Court for the Middle District of
Pennsylvania
(D. C. No. 02-cv-00561)
District Judge: Hon. William W.
Caldwell

———

Argued May 5, 2004

Before: SLOVITER and FUENTES,
Circuit Judges, and POLLAK, District

Judge[*]

(Filed: July 29, 2004)

———

Patricia C. Shea (Argued)
David R. Fine
Kirkpatrick & Lockhart
Harrisburg, PA 17101

Attorneys for Appellant

Francis T. Chardo (Argued)
James P. Barker
Deputy District Attorney
Office of District Attorney
Harrisburg, PA 17101

Attorneys for Appellee

OPINION OF THE COURT

SLOVITER, Circuit Judge.

The District Court judge who
dismissed Appellant's petition for a writ of
habeas corpus had been the state court
judge who presided over his criminal trial.
The principal question we consider is
whether the judge should have sua sponte
recused from the habeas proceeding.

———

[*]     Hon. Louis H. Pollak, Senior
United States District Judge for the
Eastern District of Pennsylvania,
sitting by designation.

## I.

Appellant Charlie Clemmons' conviction arose out of a 1980 incident of "road rage," in which Clemmons shot and killed another motorist following an altercation stemming from a traffic incident. App. at 10. Clemmons was convicted by a jury in the Court of Common Pleas of Dauphin County, Pennsylvania of first-degree murder. Then-state judge William W. Caldwell presided over the 1981 state court trial and, following Clemmons' conviction, Judge Caldwell sentenced him to life imprisonment for first-degree murder. 18 Pa. Const. Stat. Ann. § 2502. Clemmons filed a series of four petitions in state court for collateral relief under the Post Conviction Relief Act (PCRA), 42 Pa. Cons. Stat. Ann. §§ 9541 et seq., and its predecessor statute. Each petition was denied, and the denials of the first three petitions were affirmed by the state Superior Court. The fourth petition was dismissed.

On February 7, 2002, Clemmons filed a habeas corpus petition in federal court pursuant to 28 U.S.C. § 2254. His petition was eventually assigned to Judge Caldwell, who by then had been appointed to the United States District Court for the Middle District of Pennsylvania. On September 27, 2002, Clemmons applied for appointment of counsel. On November 27, 2002, Judge Caldwell issued an opinion in which he acknowledged that he had "presided at petitioner's trial" in state court. App. at 10. He then denied Clemmons' habeas petition as untimely and all other pending motions as moot. There was no specific reference to Clemmons' request for counsel.

Clemmons filed an application for a Certificate of Appealability (COA) to this court. We granted the COA directed to the following question: whether the district court judge was required to recuse himself from hearing the federal habeas corpus proceedings attacking the trial and conviction over which he presided when he was a state court judge. The same day we appointed counsel to represent Clemmons in this matter against Appellees William J. Wolfe, District Attorney of the County of Dauphin, and Pennsylvania Attorney General Gerald J. Pappert.[1] Three months later we amended the COA to add the following issue: whether the district court judge abused his discretion by deciding the merits of Appellant's petition for writ of habeas corpus without first addressing Appellant's request for counsel.

On appeal, Clemmons contends that Judge Caldwell was required to recuse himself sua sponte in Clemmons' 28 U.S.C. § 2254 habeas action challenging the trial and conviction over which Judge Caldwell formerly presided as a state court judge. Although Clemmons does not explicitly so state, it appears he argues that

---

[1]  The list of Appellees was amended per Order of the Clerk of Court dated March 10, 2004.

2

this presents a legal question over which we would have plenary review. Second, Clemmons contends that the District Court abused its discretion by failing to address the merits of Clemmons' application for appointment of counsel before dismissing the motion as moot.

**II.**

The relevant federal statute, 28 U.S.C. § 455(a), provides that "[a]ny justice, judge, or magistrate judge of the United States shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned." 28 U.S.C. § 455(a).[2] The Supreme Court has stated that the purpose of this provision is "to promote public confidence in the integrity of the judicial process." Liljeberg v. Health Servs. Acquisition Corp., 486 U.S. 847, 860 (1988).

Clemmons claims that Judge Caldwell created the appearance of impropriety by failing to recuse himself in the habeas proceeding because he had presided over the state trial. Because Clemmons did not object to Judge Caldwell's failure to recuse in the habeas proceeding, a "plain error standard of review applies." United States v. Dalfonso, 707 F.2d 757, 760 (3d Cir. 1983) (citations omitted). We may overlook the failure to object where the

"error seriously affects the fairness, integrity or public reputation of judicial proceedings." United States v. Olano, 507 U.S. 725, 732 (1993) (internal quotation marks and citations omitted). On its face, the error complained of in this case – a federal judge sitting in review of the propriety of the state proceedings conducted by that judge – seriously affects the fairness and public reputation of the judicial proceedings, and thus we proceed to consider whether the habeas judge should have sua sponte recused notwithstanding Clemmons' failure to raise the issue in the habeas proceeding. We have previously stated that the "public's confidence in the judiciary . . . may be irreparably harmed if a case is allowed to proceed before a judge who appears to be tainted." In re Kensington Int'l Ltd., 353 F.3d 211, 220 (3d Cir. 2003) (emphasis in original) (internal quotation marks and citation omitted).

When Congress amended Section 455(a) in 1974, it replaced the statute's formerly subjective standard with an objective one, stating:

> Subsection (a) of the amended section 455 contains the general, or catch- all, provision that a judge shall disqualify himself in any proceeding in which "his impartiality might reasonably be questioned." This sets up an objective standard, rather than the subjective standard

---

[2]     Clemmons disclaims any reliance on 28 U.S.C. § 144, which requires a showing of bias on the part of the judge.

3

set forth in the existing statute through use of the phrase "in his opinion."

H.R. Rep. No. 93-1453 (1974), reprinted in 1974 U.S.C.C.A.N. 6351, 6354-55.

The bedrock principle of a hierarchal judiciary that "[n]o judge shall hear or determine an appeal from the decision of a case or issue tried by him" is embedded in 28 U.S.C. § 47, a statute inapplicable here because its plain language only applies to cases on "appeal," rather than habeas petitions. The absence of a directly applicable statute in no way diminishes the importance to a litigant of review by a judge other than the judge who presided over the case at trial. Of course, a habeas action is not an appeal from the state court action. The state courts provide the appeal process. However, a habeas action provides the criminal defendant with the opportunity to have a federal court review the state proceedings for constitutional infirmities. In this respect, there is no reason why the same rules governing independence, conflict of interest, or appearance of partiality should not apply.

Although this court has not confronted the precise issue at bar, at least two[3] other circuits have addressed this

issue and stated that a federal judge should recuse himself or herself from hearing habeas petitions if s/he participated in the petitioner's state court proceedings. An almost identical issue was considered by the Seventh Circuit in Russell v. Lane, 890 F.2d 947 (7th Cir. 1989). In that case, the district court judge considered a habeas petition even though that judge had previously been a member of the panel of the state appellate court that affirmed the conviction. On appeal, the Court of Appeals for the Seventh Circuit stated that the judge in question:

> was being asked to find that he had affirmed an unconstitutional conviction, and, implicitly, that by doing so he had become complicit in sending [petitioner] to prison in violation of [petitioner's] constitutional rights . . . . A federal habeas corpus proceeding brought by a state prisoner is not a request to a state judge to reconsider his ruling. It follows the exhaustion of

---

Sixth Circuit involving similar issues to the case at bar, Morgan v. Money, 210 F.3d 372 (6th Cir. 2000) (unpublished) and Taylor v. Campbell, 831 F.2d 297 (6th Cir. 1987) (unpublished), we decline to rely upon them because they are both designated as unpublished and hence not precedential.

---

[3] Although the parties have called our attention to two decisions of the

4

the petitioner's state remedies and is addressed to a judge who was not a member of the state-court panel that affirmed the petitioner's conviction and who had no emotional commitment to vindicating state justice as administered in the petitioner's case.

Id. at 948. The court concluded that the petitioner "was entitled to have his habeas corpus petition heard by a judge who had not participated in his conviction" and thus it remanded the matter to permit the petitioner the opportunity to file a motion to vacate the order of the district judge that dismissed several of petitioner's claims. Id.

Similarly, in Rice v. McKenzie, 581 F.2d 1114 (4th Cir. 1978), the Fourth Circuit considered whether a federal district judge, who formerly presided as the chief justice of the state supreme court that reviewed the defendant's claim, could consider those claims in the context of a habeas proceeding in the federal forum without running afoul of Section 455(a). The court noted that under 28 U.S.C. § 47 a federal judge may not adjudicate the appeal of an issue or case which s/he tried as a lower court judge because a reasonable person might doubt the impartiality of a judge in such a position. Id. at 1117 ("To say the least, it would be unbecoming for a judge to sit in a United States Court of Appeals to participate in the determination of the correctness, propriety and appropriateness of what he did in the trial of the case."). Although it recognized that Section 47 was not at issue in the case before it at that time, the court stated that "[t]he same principle is involved" because "in federal habeas corpus cases the federal district judges do sit in review of the proceedings in the state courts." Id. That review is designed to be an independent one, as Justice Blackmun noted when he stated "§ 2254 motions anticipate that the federal court will undertake an independent review of the work of the state courts, even where the federal claim was fully and fairly litigated" in the state court. Reed v. Farley, 512 U.S. 339, 362 (1994) (Blackmun, J., dissenting) (emphasis added) (citations omitted).

Appellees contend that Clemmons' recusal claim should fail because the record does not show any bias or prejudice by Judge Caldwell. We certainly agree that there is no evidence that the judge exhibited any bias against Clemmons. But that is not dispositive because actual bias is not a requisite element for a valid claim under Section 455(a). In fact, Judge Caldwell granted Clemmons permission to amend his habeas petition, which negates any inference of partiality, the focus of section 455(a). Therefore, the asserted absence of actual bias is irrelevant; the mere appearance of bias still could diminish the stature of the judiciary. See

In re Kensington Int'l Ltd., 353 F.3d at 220.

Appellees correctly note that twenty years have passed since the time that Judge Caldwell presided over Clemmons' state court trial and they argue that Clemmons raised the recusal claim as a matter of strategy only after Judge Caldwell denied his habeas petition. They rely on Martin v. Monumental Life Insurance Co., 240 F.3d 223, 235-237 (3d Cir. 2001), where we rejected a claim that the district court judge, who had recused in a related case, violated Section 455(a) because he did not recuse himself in a second proceeding "involv[ing] the same principals, witnesses, [and] insurance products." Id. at 231. The basis for the judge's first recusal was that he formerly had been a partner at the law firm that represented the defendant. However, the district judge had resigned from the firm and terminated his financial arrangements with it six years prior to that case, and had never represented the defendant while at the firm. In light of these facts, we stated:

> In the instant matter, the relationship between the trial judge and the [judge's former] firm had terminated several years before the case commenced; there was no blood relationship between the trial judge and anyone in the [judge's former] firm; there is no claim of any bias by the trial judge; and the trial has been concluded.

> We see no error in the District Court's refusal to grant the motion [to recuse].

Id. at 237. In particular, we emphasized that the appellant in that case did not challenge any of the judge's factual findings at trial and only moved to recuse the judge "after a lengthy and arduous trial" in which the judge "invested substantial judicial resources." Id. at 236, 237. We speculated that "all of these considerations suggest that plaintiff's motion is a desperate effort to overturn an adverse decision." Id. at 236.

Martin is inapposite. Martin involved a judge who was challenged on the basis of his prior institutional affiliation on a matter on which he did not work. Here, the issue is the appearance of partiality because a judge was asked to review allegations regarding his own rulings at the state court trial. Moreover, unlike in Martin, where the district court judge had expended considerable time and effort in a "lengthy and arduous trial," 240 F.3d at 236, Judge Caldwell issued only a single decision denying Clemmons' motions and did not hold any hearings. In short, there is little risk of inefficiency.

Second, although Martin emphasized the passage of time between the state court trial and the federal habeas proceeding, nothing in the text of Martin suggests that this factor is dispositive. Although the passage of time would be relevant in a situation in which the recusal issue does not involve the federal judge's

6

review of his or her actions as a state judge, the case before us raises the latter issue and the passage of time cannot overcome a reasonable person's doubts about a judge's impartiality in judging his or her own past works.

Appellees' contention that the error, if any, in the district judge's failure to recuse did not cause Clemmons prejudice because any district court judge who had been assigned the case ultimately would have found Clemmons' habeas petition to be untimely is beyond the point. In Liljeberg, the Supreme Court instructed that, in determining whether a decision should be vacated based on a federal judge's failure to recuse when he had an interest in the subject matter, the court should "consider the risk of injustice to the parties in the particular case, the risk that the denial of relief will produce injustice in other cases, and the risk of undermining the public's confidence in the judicial process" while bearing in mind that "justice must satisfy the appearance of justice." 486 U.S. at 864 (internal quotation marks and citation omitted). The Supreme Court has never considered a situation such as the one before us.

Regardless of the merits of Clemmons' habeas petition, we find dispositive that the District Court's failure to recuse has created an appearance of impropriety that runs "the risk of undermining the public's confidence in the judicial process." Id.; see also Alexander v. Primerica Holdings, Inc., 10 F.3d 155, 162 (3d Cir. 1993) ("[T]he public's

confidence in the judiciary, which may be irreparably harmed if a case is allowed to proceed before a judge who appears to be tainted," requires that "justice must satisfy the appearance of justice.") (quoting In re Asbestos Litig., 977 F.2d 764, 776, 782 (3d Cir. 1992)). It is important to note that nothing in the record suggests that Judge Caldwell, a conscientious and hard-working judge, proceeded with any sort of ill motive. However, the focus of our inquiry is not his actual bias, but rather, whether a reasonable person might ascribe such a motive to any judge tasked with reviewing his past state court rulings in a federal habeas case. For the reasons set forth, we conclude that we are obliged to vacate the judgment and remand to a different district court judge.

**III.**

As we noted above, the federal statute on recusals does not specifically cover the situation raised by this case. In previous situations, we have decided that we should use our supervisory powers to fill a gap on important procedural or ethical matters on a variety of issues.[4]

---

[4] See, e.g., Forbes v. Township of Lower Merion, 313 F.3d 144, 149 (3d Cir. 2002) (we "exercise our supervisory power to require that future dispositions of a motion in which a party pleads qualified immunity include, at minimum, an identification of relevant factual issues and an analysis of the law that justifies the ruling with respect to those

The Supreme Court has explicitly recognized that the courts of appeals "have broad powers of supervision" over federal proceedings. Bartone v. United States, 375 U.S. 52, 54 (1963) (per curiam); see also United States v. Hasting, 461 U.S. 499, 505-07 (1983) (referring to supervisory authority of federal courts generally); id. at 513 n.1 (Stevens, J., concurring) (same); United States v. Payner, 447 U.S. 727, 734-36 & n.7 (1980).

Because of the absence of any applicable statute, and in order to avoid the recurrence of this situation, we now exercise our supervisory power to require that each federal district court judge in this circuit recuse himself or herself from participating in a 28 U.S.C. § 2254 habeas corpus petition of a defendant raising any issue concerning the trial or conviction over which that judge presided in his or her former capacity as a state court judge.[5]

---

issues."); United States v. Eastern Med. Billing, Inc., 230 F.3d 600, 607-13 (3d Cir. 2000) (canvassing several supervisory power decisions in Third Circuit); Vadino v. A. Valey Eng'rs, 903 F.2d 253, 259 (3d Cir. 1990) (exercising supervisory power "to require the district courts in this circuit to accompany grants of summary judgment hereafter with an explanation sufficient to permit the parties and this court to understand the legal premise for the court's order."); Quality Prefabrication, Inc. v. Daniel J. Keating Co., 675 F.2d 77, 81 (3d Cir. 1982) (ruling that "a dismissal of a complaint with prejudice as a Rule 37 sanction must be accompanied by some articulation on the record of the court's resolution of the factual, legal, and discretionary issues presented"). In particular, we have issued supervisory rules on the issue of regarding the appearance of judicial impropriety. See, e.g., Alexander, 10 F.3d at 167 (exercising supervisory power to reassign ERISA case to a different district judge); Haines v. Liggett Group, Inc., 975 F.2d 81, 98 (3d Cir. 1992) ("[T]he appearance of impartiality will be served only if an assignment to another judge is made, and we will, pursuant to our supervisory power, so direct.").

---

5 Of course, nothing in this opinion, which relates only to the role of a federal judge pursuant to 28 U.S.C. § 2254, is designed to apply to the role of a federal judge under 28 U.S.C. § 2255. In fact, Rule 4(a) of the Rules Governing § 2255 Habeas Proceedings for United States District Courts directs that a habeas petition "be presented promptly to the judge of the district court who presided at the movant's trial and sentenced him . . . ." In contrast to the position of a federal judge reviewing a § 2255 petition, who is effectively reconsidering his rulings at the trial, a federal judge reviewing a § 2254 petition cannot reconsider the actions taken by a state judge, even if s/he had been the state judge. In his or her new capacity, s/he would be reviewing the actions of

We thus shall vacate the District Court's decision to deny Clemmons' habeas petition as well as his petition for appointment of counsel[6] and we will remand with instructions that the case be assigned to a different district court judge.

another court. The difference is institutional rather than ethical. There is no basis to apply the supervisory rule enunciated here to the § 2255 situation.

[6] Because we will vacate and remand each of the District Court's decisions based on the possible appearance of bias, we need not reach the merits of Clemmons' argument that the District Court's denial of his motion for appointment of counsel was deficient for failure to include a statement of reasons.

9